Nos. 25-2540, 25-2541, 25-2612, 25-2613

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

REBECCA CARTEE-HARING and DAWN MARINELLO,
Plaintiffs-Appellees/Cross-Appellants,

v.

CENTRAL BUCKS SCHOOL DISTRICT,
Defendant-Appellant/Cross-Appellee.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

# BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS ON THE ISSUES ADDRESSED HEREIN

CATHERINE ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

JULIE L. GANTZ
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2457
julie.gantz@eeoc.gov

## TABLE OF CONTENTS

Table of Contents ........................................................................................ i

Table of Authorities ..................................................................................... ii

Statement of Interest .......................................................................................1

Statement of the Issues .....................................................................................2

Statement of the Case .......................................................................................3

A. Statement of the Facts ....................................................................................3

B. District Court's Decision...................................................................................9

Argument .........................................................................................................11

I. The district court applied proper EPA standards in upholding the jury's finding that that the plaintiffs established a prima facie case. ........13

A. The district court applied the correct legal analysis in upholding the jury finding that Donnelly was an appropriate comparator. ...........14

B. The district court correctly held that Plaintiffs could establish a prima facie case with a single comparator. ..............................................18

II. An employer bears the burden of showing that a factor other than sex caused the wage disparity. ...........................................................................28

Conclusion.........................................................................................................32

Certificate of Compliance ...............................................................................34

Certificate of Service .......................................................................................36

## TABLE OF AUTHORITIES

*Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312 (11th Cir. 2024) .......................... 12

*Barthelemy v. Moon Area Sch. Dist.*, No. 16-CV-00542, 2020 WL 1899149 (W.D. Pa. Apr. 16, 2020) ........................................................ 17, 22, 25

*Bauer v. Curators of Univ. of Mo.*, 680 F.3d 1043 (8th Cir. 2012) ....................... 24

*Brobst v. Columbus Servs. Int'l*, 761 F.2d 148 (3d Cir. 1985) .............................. 16

*Brock v. Ga. Sw. Coll.*, 765 F.2d 1026 (11th Cir. 1985) ................................ 27, 30

*Byrd v. Ronayne*, 61 F.3d 1026 (1st Cir. 1995) .................................................. 21

*Chance v. Rice Univ.*, 984 F.2d 151 (5th Cir. 1993) ............................................. 21

*Corning Glass Works v. Brennan*, 417 U.S. 188 (1974) ................................ *passim*

*Dubowsky v. Stern, Lavinthal, Norgaard & Daly*, 922 F. Supp. 985 (D.N.J. 1996) ................................................................................................ 31

*Egelkamp v. Archdiocese of Philadelphia*, No. CV 19-3734, 2021 WL 1979422, (E.D. Pa. May 18, 2021) ..................................................................... 17

*EEOC v. Del. Dep't of Health & Soc. Servs.*, 865 F.2d 1408 (3d Cir. 1989) ........................................................................................................ 11

*EEOC v. Md. Ins. Admin.*, 879 F.3d 114 (4th Cir. 2018) ............................... 18, 21

*EEOC v. White & Son Enters.*, 881 F.2d 1006 (11th Cir. 1989) .................... 21, 28

*Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507 (2d Cir. 2023) ........................ 28

*Fallon v. Illinois*, 882 F.2d 1206 (7th Cir. 1989) ................................................. 25

*Glenn v. Gen. Motors Corp.* 841 F.2d 1567 (11th Cir. 1988) ............................... 30

*Hatzimihalis v. SMBC Nikko Sec. Am., Inc.*, No. 20 CIV. 8037, 2023 WL 3764823 (S.D.N.Y. June 1, 2023) ............................................................. 20

*Hein v. Or. Coll. of Educ.*, 718 F.2d 910 (9th Cir. 1983) .......................... 24-25, 26

*Heller v. Elizabeth Forward Sch. Dist.*, 182 F. App'x 91 (3d Cir. 2006) .......................................................................................11, 15, 17

*Heymann v. Tetra Plastics Corp.*, 640 F.2d 115 (8th Cir. 1981).....................24, 26

*Hodgkins v. Kontes Chemistry & Life Scis. Prod.*, No. CIV A. 98-2783, 2000 WL 246422 (D.N.J. Mar. 6, 2000) ................................................23

*Hodgson v. Robert Hall Clothes, Inc.*, 473 F.2d 589 (3d Cir. 1973) .....................27

*Lavin-McEleney v. Marist Coll.*, 239 F.3d 476 (2d Cir. 2001) .......................15, 26

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)..............................12, 25

*Montemuro v. Jim Thorpe Area Sch. Dist.,* 99 F.4th 639 (3d Cir. 2024) .........................................................................................................2

*Piety Foley v. Drexel Univ.*, No. 22-1777, 2024 WL 3540445 (E.D. Pa. July 25, 2024).........................................................................................22

*Pollis v. New Sch. For Soc. Rsch.*, 132 F.3d 115 (2d Cir. 1997) ...........................26

*Rizo v. Yovino*, 950 F.3d 1217 (9th Cir. 2020) ................................................12, 24

*Robinson v. Shell Oil Co.,* 519 U.S. 337 (1997).....................................................19

*Ryan v. Gen. Mach. Prods.*, 277 F. Supp 2d 585 (E.D. Pa. 2003)........................22

*Shultz v. Wheaton Glass Co.,* 421 F.2d 259 (3d Cir. 1970*), amended,* (3d Cir. Feb. 13, 1970) .........................................................................15

*Siler-Khodr v. Univ. of Texas Health Sci. Ctr. San Antonio*, 261 F.3d 542 (5th Cir. 2001) ........................................................................30

*Simpson v. Kay Jewelers*, 142 F.3d 639 (3d Cir. 1998) .........................................25

*Stanziale v. Jargowsky*, 200 F.3d 101 (3d Cir. 2000) ...........................................28

*Stopka v. All. of Am. Insurers*, 141 F.3d 681 (7th Cir. 1998) ..............................21

*Strag v. Bd. of Trs.*, 55 F.3d 943 (4th Cir. 1995) .......................................26

*Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28 (2d Cir. 2015) ................26

*Thibodeaux-Woody v. Houston Cmty. Coll.*, 593 F. App'x 280 (5th Cir. 2014)......................................................................................31

*Usery v. Allegheny Cnty. Inst. Dist.*, 544 F.2d 148 (3d Cir. 1976).......................15

*Vereen v. Woodland Hills Sch. Dist.*, No. CV-06-462, 2008 WL 794451 (W.D. Pa. Mar. 24, 2008)..................................................................32

*Warf v. U.S. Dep't of Veterans Affs.*, 713 F.3d 874 (6th Cir. 2013).....................21

*Wildi v. Alle-Kiski Med. Ctr.*, 659 F. Supp. 2d 640 (W.D. Pa. 2009)......................

## Statutes, Rules, and Regulations

Equal Pay Act

29 U.S.C. § 206(d) ............................................................ 11, 12, 18, 17, 29

29 U.S.C. § 216(b)........................................................................................19

Title VII of the Civil Rights Act of 1964

42 U.S.C. §§ 2000e *et seq*...............................................................................12

29 C.F.R. § 1620.14.........................................................................................16

29 C.F.R. § 1620.13...................................................................................23, 31

Fed. R. App. P. 29(a) ......................................................................................... 1

## Other Authorities

Third Circuit Model Jury Instructions for Sex Discrimination Claims Under the Equal Pay Act § 11.1.1 & Comment (Sept. 2025) ........................................................................................... 21-22

EEOC Compliance Manual, Section 10: Compensation Discrimination, No. 915-003 (December 10, 2000) .............................. *passim*

## STATEMENT OF INTEREST

Congress charged the Equal Employment Opportunity Commission ("EEOC") with administering and enforcing the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"). In this EPA case, English teachers Rebecca Cartee-Haring and Dawn Marinello obtained a jury verdict finding Central Bucks School District ("CBSD" or "the District") liable for violating the statute by paying a male social studies teacher "more for performing work of substantially equal skill, effort, and responsibility under similar working conditions." *Id.* CBSD appealed the denial of its motion for judgment as a matter of law and its challenge to the verdict as against the weight of the evidence. The District's appeal raises several important questions about the proper analysis of a wage discrimination claim under the EPA. Because the EEOC has a strong enforcement interest in the legal standards applicable to the EPA, it offers its views to the Court pursuant to Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE ISSUES[1]

1. Whether the district court applied the correct legal standard in upholding the jury's finding that the female English teacher plaintiffs and their male social studies teacher comparator perform substantially similar jobs under similar working conditions despite their different state subject matter certifications.

2. Whether the district court correctly held that the plaintiffs presented legally sufficient evidence to permit a jury to conclude that they established a prima facie case of wage discrimination by showing that a single male comparator was earning more for performing substantially equal work.

3. Whether an employer bears the burden of showing, as part of its affirmative defense, that a "factor other than sex" caused the wage disparity.

---

[1] The EEOC takes no position on any other issue in this case. The issues the EEOC does address are based on the district court's rulings on post-trial motions. Defendant-Appellant challenges the court's ruling on the issues in its brief, while the Plaintiffs' brief rests on the district court's decision ruling on the motions. Pls.Br. at 1 n.1. The EEOC understands that the issues it addresses are properly before this Court. *See Montemuro v. Jim Thorpe Area Sch. Dist.*, 99 F.4th 639, 646–47 (3d Cir. 2024).

## STATEMENT OF THE CASE

### A. Statement of the Facts

CBSD is a public school district in Bucks County, Pennsylvania, with approximately 3,400 employees. J.A.1878. The District pays its teachers according to a collectively bargained salary schedule of "steps" using a formula that incorporates experience, seniority, degree, and additional credits. J.A.1637, 1814, 2104-16, 2264-76. CBSD's Administrative Procedure to Determine Salary Schedule states that "in the event of a critical need situation, or the lack of suitable certified candidates, it may become necessary to adjust the formula to hire the best candidate." J.A.2426. The District uses a separate Extra Duty Responsibility ("EDR") pay scale to compensate employees, in addition to their salaries, for non-teaching duties such as coaching a sport. J.A.1598, 1779. The Pennsylvania Department of Education requires teachers to be certified in the subject they will be teaching. J.A.1867.

Rebecca Cartee-Haring started working for the District in fall 2007 as an English teacher at Central Bucks West High School with a starting salary of $54,100. J.A.1637. She was also a girls' lacrosse coach from 2013 to 2019; her coaching stipend was never included in her teacher salary. J.A.1668-70,

1696. Although she had nine years of teaching experience, CBSD placed her on step 4, a pay cut from her previous job. J.A.1783, 1719, 1922. When she tried to negotiate, the assistant superintendent told her that "it was the best they ever do and I should be grateful for it." *Id.*

Dawn Marinello, a state-tenured middle school English teacher who started working at CBSD in the 2016-17 school year, had fourteen years of classroom teaching experience. J.A.1789, 1912-13. She was hired only two days before reporting for duty because of a sudden vacancy. J.A.1911, 1916. CBSD therefore considered her a "critical need" hire. J.A.1550-51, 1916-17. Nevertheless, CBSD placed her on the lowest step of the salary schedule at $51,156.87. J.A.1913; 2308. Marinello did not receive a salary increase relative to what she had been making before coming to CBSD and was never permitted to negotiate her salary. J.A.1918-21.

CBSD hired John Donnelly as a social studies teacher and football coach at Central Bucks East High School mid-school year in 2010 and placed him at the highest step of his education level (16) to offer him $101,810. J.A.2305, 1594, 1608. By 2020-21, his salary was $112,863. J.A.2307. For the 2021-22 school year, Donnelly was earning $126,703, literally "off the chart." J.A.2305, 1703-05, 1699, 1728. In contrast, CBSD paid Cartee-

Haring $98,829 for both the 2020-2021 and 2021-2022 school years. J.A.2307. For the 2022-23 school year, Donnelly was earning $128,426, again above the highest step of $116,586. J.A.1701-03, 1729-30. Cartee-Haring was earning $104,336. J.A.2307. And comparing Donnelly to Marinello: when Marinello started, Donnelly was making $104,730. J.A.2306. By 2020-2021, she was earning $62,651 while Donnelly was making $112,863. *Id.* The following year, her salary was $62,751 compared to his $126,703. *Id.*

Cartee-Haring sued the District for pay discrimination under the EPA on April 22, 2020. J.A.145. Marinello filed her EPA suit on behalf of herself and similarly situated female teachers on June 8, 2021. No. 21-2597-R.1. The district court consolidated the cases for all purposes except trial. J.A.229. In August 2022, the district court certified a collective action. J.A.424. The first trial, held July 23-30, 2024, resulted in a hung jury and mistrial. J.A.1298. Prior to the second trial, the court decertified the collective action. J.A.65. For the second trial, the district court consolidated Cartee-Haring's and Marinello's cases and limited each plaintiff to offering two male comparators who were teachers of academic subjects and were paid more than plaintiffs. J.A.66-67. Cartee-Haring designated Donnelly and another

social studies teacher, Malcolm Mosley, while Marinello offered Donnelly only. J.A.108, 112.

The second trial, held May 5-8, 2025, resulted in a jury verdict for the plaintiffs. J.A.2036-42. The plaintiffs put on seven witnesses, including the plaintiffs themselves and male comparators Donnelly and proposed comparator Mosley. J.A.109-110. They also put on three former CBSD employees: former principal Christina Lang, former social studies teacher Kevin McDermott, and former superintendent Dr. Abraham Lucabaugh. J.A.109. The plaintiffs' case centered on the disparity in pay and evidence that the jobs of English teacher and social studies teacher were substantially similar within the meaning of the EPA. J.A.1930-40. Witnesses testified that English and social studies teachers perform the same core duties, including designing lesson plans, evaluating students, teaching students directly, managing their classrooms, collaborating with other teachers, and communicating with families. *See, e.g.*, J.A.1545-1552 (Lang); J.A.1579-88, 1592 (McDermott); J.A.1601-07 (Donnelly), J.A.1649-57 (Cartee-Haring); J.A.1795-96 (Marinello). These witnesses agreed that both teaching jobs required equivalent skill, effort, and responsibility and were performed under similar working conditions. *See, e.g.*, J.A.1579-81, 1567-68,

1592, 1608, 1795-96. They confirmed that all teachers at CBSD were subject to the same policies and salary schedule. *See, e.g.*, J.A.1582-85, 1579.

Donnelly testified that coaching football is unrelated to his job as a social studies teacher and that he is paid for that job according to a different salary schedule. J.A.1598-99. If he stopped coaching, his teaching salary would remain unchanged. J.A.1598. Donnelly testified that preparing an English lesson plan is different from a social studies lesson plan, and that he had never evaluated students in English content, calculated grades for English, or instructed in English content. J.A.1621-24. CBSD's witness, former superintendent Robert Laws, testified that because the content taught by social studies teachers differs from that taught by English teachers, the jobs were not substantially similar. J.A.1838-41. According to Laws, "it's all based on the content. I can't visualize putting an English teacher in a social studies classroom and say, okay, discuss the war of 1812." J.A.1839.

Lucabaugh testified that he was involved in Donnelly's hiring in 2010. J.A.1774. He explained that he had to fire the head football coach mid-season after investigating reports of serious misconduct. J.A.1774-75. To restore trust in the program, they had to find someone "who had a

proven track record" and "success dealing with very challenging situations." J.A.1776. Once Donnelly was identified as the best football coach candidate to "right the ship," Laws instructed Lucabaugh to ensure Donnelly was also "an outstanding teacher" by adding extra screening and interviews to the normal hiring process. J.A.1776-77. He testified that CBSD made an exception to the salary schedule to persuade Donnelly to leave his other position. J.A.1778, 1782. Lucabaugh asserted that where a "critical need" arises, the District places a new hire "where necessary" on the salary schedule. J.A.1811. Lucabaugh testified that the District could not pay Donnelly more to coach football under the EDR scale because the amounts are set by the collective bargaining agreement. J.A.1807-08.

Laws asserted that the CBSD worked "at hiring the best" and if the salary guidelines "weren't suitable" and "the person wouldn't come," the District would "place the individual … on the salary scale that might be equal to, or better than, where they were, so they would come to the District." J.A.1843. CBSD could deviate from the salary schedule "if there was a critical need," meaning "we couldn't find someone to fill the position." J.A.1844-45. Laws testified Donnelly's salary before coming to CBSD was "very close to what we offered him" but then admitted he did

not know what the District paid him. J.A.1853. Laws testified that Donnelly was an attractive candidate because of "his reputation as a man, as a coach, not so much his wins and losses" and the District is "looking for people to be strong role models." *Id.*

The jury returned a verdict in favor of the plaintiffs, concluding that CBSD paid them less than Donnelly for substantially equal work. J.A.2036-39. The jury likewise found that the District failed to prove an affirmative defense. J.A.2037, 2039. The jury awarded Marinello $81,000 and Cartee-Haring $84,000 for two years of backpay. J.A.110.

Both parties filed post-verdict motions. The plaintiffs moved for judgment as a matter of law under Rule 50 and/or to amend or modify judgment under Rule 59, and for liquidated damages. J.A.106; No. 21-2587-R.469. CBSD moved for judgment notwithstanding the verdict, or in the alternative, for a new trial. J.A.106-07; No.21-2587-R.470.

### B. District Court's Decision

The district court granted in part the plaintiffs' motion for damages and denied the District's motions for judgment as a matter of law and, alternatively, for a new trial. J.A.124. The District argued that it should have been allowed to offer evidence of male teachers who earned less than

the plaintiffs, and that the plaintiffs were required to show they were paid less compared to the average man performing substantially equal work. J.A.117-118. This evidence, it asserted, would have prevented the plaintiffs from establishing a prima facie case and would have allowed CBSD to rebut that showing with "its own male comparators." J.A.117, 118.

The court held that salaries of male teachers who were not Plaintiffs' comparators are irrelevant to Plaintiffs' prima facie case because "Plaintiffs need only present evidence of an EPA violation with respect to one male employee." J.A.118. And once a plaintiff makes a prima facie showing, the text of the EPA delineates only four affirmative defenses. J.A.118-119. The EPA does not permit an employer to avoid liability in an additional way—that is, "by pointing to other instances where it did not violate the EPA." J.A.119.

The court also rejected CBSD's argument that Donnelly could not be a comparator because he taught social studies and was a football coach while Cartee-Haring and Marinello were English teachers. J.A.120. The court reasoned that his coaching position "does not preclude a jury determination that Mr. Donnelly performed substantially equal work" as a social studies teacher, nor is his state certification in a different subject

"'determinative for purposes of assessing whether jobs are substantially situated for an EPA claim'" where the jury found that Donnelly and the plaintiffs performed substantially equal work "notwithstanding content differences…." J.A.120 (quoting *Heller v. Elizabeth Forward Sch. Dist.*, 182 F. App'x 91, 95 (3d Cir. 2006)).

CBSD appealed, and Plaintiffs cross-appealed.

**ARGUMENT**

The EPA provides that an employer shall not "discriminate … between employees on the basis of sex by paying wages to employees … at a rate less than the rate at which he pays wages to employees of the opposite sex … for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d). As the Supreme Court has explained, "The [Equal Pay] Act's basic structure and operation are … straightforward." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). "In order to make out a case under the Act," a plaintiff "must show that an employer pays different wages to employees of opposite sexes" for equal work. *Id.*; *see also EEOC v. Del. Dep't of Health & Soc. Servs.*, 865 F.2d 1408, 1413-14 (3d Cir. 1989) ("A plaintiff establishes a *prima facie* case by showing

that employees of opposite sex were paid differently for performing … work of substantially equal skill, effort and responsibility, under similar working conditions.”).

Once the plaintiff has made this prima facie showing, the burden shifts to the employer to prove one of the four statutory affirmative defenses: an employer will not be liable for a wage rate differential where “payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.” 29 U.S.C. § 206(d)(1); *see also Corning Glass Works*, 417 U.S. at 196. At no point does the burden of proof shift back to the plaintiff. *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1318 (11th Cir. 2024) (“A third step, assessing pretext, makes no sense in an EPA analysis because [the EPA], unlike Title VII,[2] does not require proof of intentional discrimination.”); *Rizo v. Yovino*, 950 F.3d 1217, 1223 (9th Cir. 2020) (“[T]he familiar three-step *McDonnell Douglas* framework[3] that applies to Title VII claims is not used in EPA cases.”).

---

[2] Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*
[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

The jury found that Donnelly was a proper comparator despite teaching a different subject than the plaintiffs, and the district court properly refused to set aside that finding. The district court also correctly held that a plaintiff may establish a prima facie case under the EPA with a single comparator. This argument is consistent with the statutory text, other circuits' decisions, and the Commission's longstanding position. Finally, when considering CBSD's argument that it paid plaintiffs less than Donnelly because of a "factor other than sex," this Court should apply the legal framework that places the burden of proving that affirmative defense on CBSD.

## I. The district court applied proper EPA standards in upholding the jury's finding that that the plaintiffs established a prima facie case.

The jury found that Cartee-Haring and Marinello proved a prima facie case of wage discrimination under the EPA when it credited their evidence that CBSD paid Donnelly more than both plaintiffs for performing substantially equal work. As the district court correctly held, CBSD has offered no sound legal basis for reversing the jury's finding on that issue.

### A. The district court applied the correct legal analysis in upholding the jury finding that Donnelly was an appropriate comparator.

Because the central question for EPA purposes is whether a man and a woman performing equal work are paid unequally, when establishing a prima facie case, only comparators performing substantially equal work are relevant. *Corning Glass Works*, 417 U.S. at 195. As the district court held, there is no legal basis to disturb the jury's finding that Donnelly was a proper comparator–*i.e.*, that CBSD paid Donnelly more than Cartee-Haring and Marinello to perform substantially equal work under similar working conditions even though he taught social studies and the plaintiffs taught English. J.A.2036-37, 2039. CBSD argues that plaintiffs' and Donnelly's jobs could not be substantially equal under the EPA as a matter of law because the plaintiffs "are not legally permitted to perform [the comparator's] job" given that "they did not receive the required training and education to deliver the content." Def.Br.35. In other words, because the fact that the plaintiffs cannot teach social studies without additional certification "proves that the jobs of English teachers and social studies teachers require different skills and therefore are not substantially equal." *Id.* at 36.

The EPA does "not require that the jobs be identical, but only that they must be substantially equal." *Shultz v. Wheaton Glass Co.*, 421 F.2d 259, 265 (3d Cir. 1970*), amended*, (3d Cir. Feb. 13, 1970); *see also Usery v. Allegheny Cnty. Inst. Dist.*, 544 F.2d 148, 153 (3d Cir. 1976) (hospital barbers and beauticians performed substantially equal work even though subject matter of training and education did not fully overlap). This Court has already rejected a contrary argument in a context very similar to this one, albeit in an unpublished decision. In *Heller v. Elizabeth Forward School District*, 182 F. App'x 91, 95 (3d Cir. 2006), the school district argued that if the plaintiff teachers could not legally perform the same job as the comparator teachers then "they could not be sufficiently comparable to these teachers." In explaining why such an argument "misses the mark," the Court emphasized that the jobs being compared need to be substantially equal, not identical, and that whether a librarian with an instructional certificate in library sciences could be a comparator to a classroom teacher was properly submitted to the jury, which found in favor of the plaintiff teachers. *Id.* at 96. In sum, "[T]he presence of a statute limiting who can teach specific subjects is not determinative for purposes of assessing whether jobs are similarly situated for an EPA claim." *Id.; see also Lavin-*

*McEleney v. Marist Coll.*, 239 F.3d 476, 481 (2d Cir. 2001) (holding reasonable jury could find that professors in different departments performed substantially equivalent work).

Contrary to CBSD's argument, plaintiffs and Donnelly need not be able to perform each other's jobs to be substantially equal. Instead, the critical inquiry is whether "the jobs to be compared have a 'common core' of tasks" or "a significant core of common work." *Brobst v. Columbus Servs. Int'l,* 761 F.2d 148, 156 (3d Cir. 1985); *see also id.* at 158 (trier of fact must "compare the totality of work performed" and "scrutinize the job as a whole"). The Commission's longstanding position is consistent with this precedent. 29 C.F.R. § 1620.14(c) ("[T]he fact that jobs are performed in different departments … would not necessarily be sufficient to demonstrate that unequal work is involved."); EEOC Compliance Manual, Section 10: Compensation Discrimination, No. 915-003, at 10-IV.E.2 (December 10, 2000) ("Compliance Manual"), https://www.eeoc.gov/laws/guidance/section-10-compensation-discrimination (substantial equality turns on whether the jobs have the same common core of tasks).

The district court properly upheld the jury's finding that the plaintiffs and their comparator performed substantially equal work despite teaching different subjects, and despite Donnelly's separate role as a football coach, ruling these distinctions were "not determinative." J.A.119-20 (citing *Heller*, 182 F. App'x at 95). The subject taught is the only difference; the teachers perform the same core of duties under the same working conditions. No witness testified that social studies teachers performed additional duties compared to English teachers or that teaching social studies is more difficult than teaching English. Except for emphasizing Donnelly's unrelated duties as football coach, for which the District separately compensated him, CBSD did not offer evidence that he "had different responsibilities or necessary skills or that differing or additional tasks make the work substantially different." *Barthelemy v. Moon Area Sch. Dist.*, No. 16-CV-00542, 2020 WL 1899149, at *16 (W.D. Pa. Apr. 16, 2020) (citation modified). Here, teaching a different academic subject does not add or subtract from the core of common duties—a difference that could make two individuals unsuitable comparators. *See, e.g.*, *Egelkamp v. Archdiocese of Philadelphia*, No. CV 19-3734, 2021 WL 1979422, at *8 (E.D. Pa. May 18, 2021)

(if one job entails additional job duties, "[t]he inquiry then turns to whether the differing or additional tasks make the work substantially different").

### B. The district court correctly held that Plaintiffs could establish a prima facie case with a single comparator.

As the district court instructed the jury, the prima facie case standard requires a plaintiff to show that the defendant paid a single opposite-sex comparator more for substantially equal work. J.A.2079-82. It does not require that a plaintiff use statistics or otherwise "show a pattern of sex-based compensation disparities in a job category." *See, e.g., EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 121-22 (4th Cir. 2018) (EPA plaintiff not required to show women, as a class, are more highly paid than men, as a class); Compliance Manual, at 10-IV.E.1 (complainant need not show a pattern of sex-based compensation disparities in a job category).

This prima facie case standard is grounded in the EPA's text. The statutory language uses "employees" in the plural to describe both the victims *and* their comparators. *See* 29 U.S.C. § 206(d)(1) (forbidding employers to "discriminate … between *employees* on the basis of sex by paying wages to *employees* … at a rate less than the rate at which he pays wages to *employees* of the opposite sex." (emphases added)). If this

language were read to require a comparison of a group of employees, section 206(d) would be transformed into a class-based provision, requiring multiple *victims* of wage discrimination as well as multiple opposite-sex comparators to establish a claim. But this implication is flatly at odds with other language in the statute. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 345 (1997) (court interpreting a statutory provision should look to "[t]he broader context provided by other sections of the statute [for] assistance").

Section 216(b) provides that "[a]n action to recover the liability prescribed in [section 206] may be maintained against any employer … by *any one* or more employees for and [on] behalf of *himself* or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Additionally, Section 206(d)(1) itself speaks in the singular when it provides that an employer may not "in order to comply with the provisions of this subsection, reduce the wage rate of any employee." *Id.* § 206(d)(1). This language indicates that an employee could establish a prima facie case by pointing to *one* higher paid employee, because otherwise, an employer could not "comply with the provisions of this subsection" by reducing the compensation of a singular "employee."

Consequently, an EPA plaintiff need not demonstrate that men as a class are paid higher wages than women as a class. It is simply irrelevant to the plaintiffs' requisite prima facie showing that the employer is not discriminating against some *other* teachers. As one court explained, "it is unclear why one individual's ability to recover for violations of the EPA should depend on whether other employees' compensation also violated the law: one would expect one woman's being paid the same as comparable men to prevent *her* from recovering under the EPA, but not also to prevent *other* women who *were paid less* than comparable men from recovering, too." *Hatzimihalis v. SMBC Nikko Sec. Am., Inc.*, No. 20 CIV. 8037, 2023 WL 3764823, at *7 (S.D.N.Y. June 1, 2023).

CBSD's assertion that "most [c]ourts" interpret the EPA differently to require an average of multiple comparators to establish a prima facie case is inaccurate. Def.Br.32. Although this Court has not ruled expressly on whether evidence that an employer paid a single male comparator more to perform a substantially equal job is sufficient to establish a prima facie case, several other courts of appeals have done so. Some affirmatively recognize that an EPA claimant need only show she was "paid less than one or more males" for equal work to establish a prima facie case of wage

discrimination. *Md. Ins. Admin.*, 879 F.3d at 121; *see also id.* at 122 ("An EPA plaintiff is not required to demonstrate that males, as a class, are paid higher wages than females, as a class, but only that there is discrimination in pay against an employee with respect to one employee of the opposite sex."); *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1009 (11th Cir. 1989) ("Plaintiff need only show discrimination in pay against an employee vis-a-vis one employee of the opposite sex."). Additional circuit courts that have not addressed the question directly nonetheless take this approach as well, describing the EPA's prima facie standard as requiring plaintiffs to identify a single comparator of the opposite sex who was paid more for similar work. *See, e.g.*, *Warf v. U.S. Dep't of Veterans Affs.*, 713 F.3d 874, 881 (6th Cir. 2013); *Byrd v. Ronayne*, 61 F.3d 1026, 1033 (1st Cir. 1995); *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993); *Stopka v. All. of Am. Insurers*, 141 F.3d 681, 685 (7th Cir. 1998).

While not binding, Third Circuit Model Jury Instructions also contemplate the possibility that a plaintiff will have a single comparator. *See* Instructions for Sex Discrimination Claims Under the Equal Pay Act § 11.1.1, Elements of an Equal Pay Act Claim, Basic Elements (Sept. 2025), https://www.ca3.uscourts.gov/model-civil-jury-table-contents-and-

instructions ("First: [Defendant] has employed [plaintiff] and (a) male employee(s) in jobs requiring substantially equal skill effort and responsibility; Second: the two jobs are performed under similar working conditions; and Third: [Plaintiff] was paid a lower wage than the male employee(s) doing substantially equal work.").[4] And district courts within this circuit apply the single comparator rule, as the district court here pointed out. J.A.118. *See, e.g.*, *Wildi v. Alle-Kiski Med. Ctr.*, 659 F. Supp. 2d 640, 660 (W.D. Pa. 2009), *vacated in part on reconsideration* by *Wildi v. Alle-Kiski Med. Ctr.*, No. CV 08-284, 2009 WL 10729564, at *1 (W.D. Pa. Nov. 6, 2009) (plaintiff only needs one comparator); *Ryan v. Gen. Mach. Prods.*, 277 F. Supp 2d 585, 596 (E.D. Pa. 2003) (similar); *Piety Foley v. Drexel Univ.*, No. 22-1777, 2024 WL 3540445, at *13 (E.D. Pa. July 25, 2024) (allowing EPA claim to proceed to trial based on one male comparator); *Barthelemy*, 2020 WL 1899149, at *13 n.29 & *17 n.35 (declining to follow an average-of-

---

[4] The Comment further states, "To establish a violation of the Equal Pay Act, a plaintiff must prove that the defendant paid her lower wages than were paid to a man or men for 'equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.'" *Id.* at 9-10 (quoting *Corning Glass Works*, 417 U.S. at 195).

comparators' wages rule); *Hodgkins v. Kontes Chemistry & Life Scis. Prod.*, No. CIV A. 98-2783, 2000 WL 246422, at *15 (D.N.J. Mar. 6, 2000).

This is also the Commission's longstanding position, as noted above. *See* Compliance Manual, at 10-IV.B (explaining that a prima facie case under the EPA requires showing, inter alia, that "the complainant receives a lower wage than paid to *an employee of the opposite sex* in the same establishment" (emphasis added)); *id.* at 10-IV.E.1 ("A prima facie EPA violation is established by showing that a male and a female receive unequal compensation for substantially equal jobs within the same establishment. A complainant … must show that *a specific employee of the opposite sex* earned higher compensation for a substantially equal job." (emphasis added)); *id.* (no requirement to show pattern of wage disparities). Similarly, the EEOC guidelines addressing application of the EPA contemplate the use of a single comparator to establish a prima facie case under the statute. *See* 29 C.F.R. § 1620.13(b)(2) ("[W]here an employee of one sex is hired or assigned to a particular job to replace an employee of the opposite sex but receives a lower rate of pay than the person replaced, a prima facie violation of the EPA exists.").

CBSD's contrary argument relies heavily on *Hein v. Oregon College of Education*, 718 F.2d 910, 916 (9th Cir. 1983), which held that the "proper test for establishing a prima facie case ... is whether the plaintiff is receiving lower wages than the average of wages paid to all employees of the opposite sex performing substantially equal work and similarly situated[.]" Seizing on the statute's use of plural "employees," the *Hein* court took issue with the EPA plaintiff choosing a single employee who was the highest paid where there were other available comparators. *Id.* But this approach to the EPA's language—myopically focusing on a single word—is unsustainable in context, based on the statutory construction principles discussed above.

Moreover, *Hein* applied the reasoning from an Eighth Circuit *Title VII* sex discrimination case. *See id.* (discussing *Heymann v. Tetra Plastics Corp.*, 640 F.2d 115, 122 (8th Cir. 1981)). Title VII, however, is fundamentally different from the EPA, which is a strict liability statute: if an employer pays different wages to two employees of the opposite sex performing substantially equal work, the employer is liable unless it can establish an affirmative defense. *Rizo*, 950 F.3d at 1223 ("Unlike Title VII, the EPA does not require proof of discriminatory intent."); *see also Bauer v. Curators of*

*Univ. of Mo.*, 680 F.3d 1043, 1045 (8th Cir. 2012) (describing EPA as "a strict liability statute"); *Fallon v. Illinois,* 882 F.2d 1206, 1213 (7th Cir. 1989) (same). *Hein*'s reliance on Title VII principles makes it unpersuasive. *See Hein*, 718 F.2d at 916; *see also Barthelemy*, 2020 WL 1899149, at *13 n.29 (explaining that *Hein*'s rule "has almost never been adopted in [the Third] Circuit.").

Likewise, CBSD is wrong that *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 646-47 (3d Cir. 1998), is "analogous." Def.Br.22. CBSD argues, quoting *Simpson*, 142 F.3d at 646-47, that "'[Plaintiff] can not pick and choose a person she perceives is a valid comparator who was allegedly treated more favorably and completely ignore a significant group of comparators treated equally or less favorably than she.'" *Simpson*, however, was an age discrimination case using the *McDonnell Douglas* framework, not an EPA case. 142 F.3d at 642-45. What the court in *Simpson* believed to be evidence of the employer's intent has no bearing on the EPA analysis. *Id.* at 647. The same goes for the District's contention that "[t]he excluded evidence dramatically illustrates that the School District treats men and women equally," that there was an "absence of any pattern or intent to discriminate[,]" and so on. Def.Br.10, 17-18. CBSD's position is based on an

outlier case that incorrectly relied on Title VII's intent standard and irrelevant intent analysis in an age discrimination case from this circuit, and therefore, this Court should reject it.

CBSD cites a smattering of cases other than *Hein* for the proposition that defendants may introduce other comparators. Def.Br.19-22. CBSD's invocation of these cases is misleading. Some of these cases deal with statutes other than the EPA. *Heymann*, 640 F.2d at 119-22 (Title VII); *Pollis v. New Sch. For Soc. Rsch.*, 132 F.3d 115, 121-23 (2d Cir. 1997) (Title VII portion of decision). In another case, the court concluded that the plaintiff had successfully identified a single male comparator, noted that *she* had introduced additional, statistical evidence about average pay (in part for damages purposes), and concluded that the presence of both forms of evidence meant that the court need not decide whether "either type of evidence standing alone would have been sufficient to prove discrimination under the Equal Pay Act." *Lavin-McEleney*, 239 F.3d at 480-82; *Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 30-31 (2d Cir. 2015) (misapplying *Lavin-McEleney*). The aspects of the remaining cases cited by the Defendant concern the employers' affirmative defenses or damages calculations, not the employee's prima facie case. *Strag v. Bd. of Trs.*, 55 F.3d

943, 951 (4th Cir. 1995) (affirmative defense); *Brock v. Ga. Sw. Coll.*, 765 F.2d 1026, 1033 n.10 (11th Cir. 1985) (damages); *Hodgson v. Robert Hall Clothes, Inc.*, 473 F.2d 589, 597-98 (3d Cir. 1973) (affirmative defense).

As these cases suggest, evidence of a single comparator earning more does not conclusively establish liability under the EPA—instead, it merely satisfies the plaintiff's burden to establish her prima facie case. The defendant then has the opportunity to prove that any pay disparity resulted from a seniority system, a merit system, a production-based compensation system, or "any other factor other than sex." 29 U.S.C. § 206(d)(1); *see Corning Glass Works*, 417 U.S. at 196-97. The pay of individuals other than a plaintiff's identified comparator (such as opposite-sex comparators paid less or same-sex employees paid more) could be relevant to an employer's efforts to establish an affirmative defense. Compliance Manual. at 10-IV.E.1 ("[I]f other women are paid the same as or more than males, this may indicate that a factor other than sex explains the complainant's compensation."). Of course, evidence of opposite-sex individuals earning less than a plaintiff does not establish *by itself* that a factor other than sex is at play, but it may shed light on the question. Such evidence could, for example, reveal that superior relevant education or

relevant qualifications explained a challenged wage disparity. *Cf. White & Son Enters.*, 881 F.2d at 1009-10.

## II. An employer bears the burden of showing that a factor other than sex caused the wage disparity.

In an EPA case, once the plaintiff establishes a prima facie case, "[t]he burden of *persuasion* then shifts to the *employer* to demonstrate the applicability of one of the four affirmative defenses specified in the Act." *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000). That burden is "a heavy one." *Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507, 515 n.18 (2d Cir. 2023) (citation modified). The employer must establish one of the four exceptions *did in fact* cause the disparity. *Stanziale*, 200 F.3d at 107-08 ("the employer [must] submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity.").[5]

---

[5] The court's jury instructions included this language: "Defendant contends that the difference in pay between the jobs of Plaintiffs and their comparators was the result of factors other than sex.… For example, Defendant contends that any disparity in pay is attributable to things like different experience and training. To establish this defense, Defendant must prove that Plaintiffs' sex played no part in the difference in wages.

CBSD argues that it established that it paid plaintiffs less than Donnelly because of a "factor other than sex." 29 U.S.C. § 206(d)(1). At trial, Lucabaugh maintained that CBSD believed Donnelly to be the strongest candidate to replace Central Bucks East High School's football coach mid-year, and the District had to offer him such a high salary to persuade him to leave his job at another school district. J.A.1776-78. On appeal, the District says that "[t]he EPA does not require districts to ignore market forces, to treat all positions as interchangeable, or to forgo qualified candidates to avoid making a competitive offer," and "[t]here was no basis for the jury to decide that Donnelly's hiring above step was not based on a factor other than sex." Def.Br.13, 29.

To the extent that the District is arguing that market forces *alone* (divorced from a particular individual's job-related qualifications) can be a valid "factor other than sex," that argument is flawed. The Supreme Court has rejected the notion that "market forces" are a "factor other than sex" such that relying on them alone could justify pay disparities under the

Defendant does not establish this defense by claiming that 'market forces' justify a disparity in pay for equal work." J.A.2082.

EPA. *Corning Glass Works,* 417 U.S. at 205 ("That the company took advantage of [a job market in which it could pay women less] may be understandable as a matter of economics, but its differential nevertheless became illegal once Congress enacted into law the principle of equal pay for equal work."); *see also Siler-Khodr v. Univ. of Texas Health Sci. Ctr. San Antonio*, 261 F.3d 542, 549 (5th Cir. 2001) (Employer's "market forces argument is not tenable and simply perpetuates the discrimination that Congress wanted to alleviate when it enacted the EPA."); *Glenn v. Gen. Motors Corp.* 841 F.2d 1567, 1570 (11th Cir. 1988) (Simply "'pay[ing] [employees] what it takes to induce them to accept … employment'" is not a valid EPA defense, as "'historically companies … hire women at lower starting salaries.'"); Compliance Manual, at 10-IV.F.2.g.

That said, an employer need not ignore market value when setting an employee's salary. As the Commission explained in its guidance, market value may qualify as a "factor other than sex" "if the employer proves that it assessed the marketplace value of the particular individual's job-related qualifications, and that any compensation disparity is not based on sex." Compliance Manual, at 10-IV.F.2.g; *cf. Brock,* 765 F.2d at 1037 ("[A]ny credibility that the market force defense might have is diminished by the

fact that those charged with hiring did not inform themselves of the market rates of particular expertise, experience, or skills."); *Dubowsky v. Stern, Lavinthal, Norgaard & Daly*, 922 F. Supp. 985, 993 (D.N.J. 1996) ("It is not legitimate under the EPA to pay an equally qualified woman less than a man because of her inferior bargaining power in the market *as a woman*…. A court should not accept a 'market forces' defense unless the employer can rationally explain the use of market information.").

To be a bona fide factor *other than* sex, such as the need to fill unexpected vacancies, the factor must actually be sex neutral. As the EEOC's Guidance explains, an employer asserting a factor-other-than-sex affirmative defense must establish that a "gender-neutral factor, applied consistently, in fact explains the compensation disparity." *See* Compliance Manual, at 10-IV.F.2 (citing, inter alia, *Corning Glass*, 417 U.S. at 204). *See also* 29 C.F.R. § 1620.13(c) ("factors" used as affirmative defenses "must be applied on a sex neutral basis"); *Thibodeaux-Woody v. Houston Cmty. Coll.*, 593 F. App'x 280 (5th Cir. 2014) ("A practice is not a bona fide 'factor other than sex' if it is discriminatorily applied," and the court found evidence that defendant "discriminatorily applied its negotiation policy" when it told a woman she could not negotiate but considered a man's

counteroffer."); *Vereen v. Woodland Hills Sch. Dist.*, No. CV-06-462, 2008 WL 794451, at *25 (W.D. Pa. Mar. 24, 2008) ("Even assuming the School District needed to pay [male comparators] Fischer, Morgan, and Thomas higher salaries in order to secure their employment, [it] did not seem as concerned about what it would take to secure [female plaintiff] Vereen's continued employment.").

## CONCLUSION

For the foregoing reasons, the court should uphold the district court's decision as to the issues addressed herein.

Respectfully submitted,

CATHERINE ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

s/*Julie L. Gantz*
JULIE L. GANTZ
District of Columbia Bar No. 460607
Attorney
EQUAL EMPLOYMENT

OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2547
julie.gantz@eeoc.gov

February 5, 2026

## CERTIFICATE OF COMPLIANCE

Pursuant to 3d Cir. L.A.R. 28.3(d) & 46.1(e), I certify that, as an attorney representing an agency of the United States, I am not required to be admitted to the bar of this Court. *See* 3d Cir. L.A.R. 28.3, comm. cmt. I also certify that all other attorneys whose names appear on this brief likewise represent an agency of the United States and are also not required to be admitted to the bar of this Court. *See id.*

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(f) because it contains 6459 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 14 point.

Pursuant to 3d Cir. L.A.R. 31.1(c), I certify that the text of the electronically filed version of this brief is identical to the text of the hard copies of the brief that will be filed with the Court. I further certify pursuant to 3d Cir. L.A.R. 31.1(c) that, prior to electronic filing with this Court, I performed a virus check on the electronic version of this brief

using Microsoft Defender Antivirus version 1.443.1012.0, and that no virus was detected.

s/*Julie L. Gantz*
JULIE L. GANTZ
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2547
Julie.gantz@eeoc.gov

February 5, 2026

## CERTIFICATE OF SERVICE

I certify that on February 5, 2026, I electronically filed the foregoing brief in PDF format with the Clerk of Court via the appellate CM/ECF system. I certify that all counsel of record are registered CM/ECF users, and service will be accomplished via the appellate CM/ECF system.

s/*Julie L. Gantz*
JULIE L. GANTZ
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2547
julie.gantz@gmail.com